UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

GLEN ANDREW RUNGE,                          )
                                            )
                          Plaintiff,        )
                                            )
              v.                            )        4:09-cv-130-TWP-WGH
                                            )
STANLEY FASTENING SYSTEMS, L.P.,            )
A Wholly Owned Subsidiary of                )
Stanley Black & Decker, Inc., f/k/a         )
Stanley Bostitch, Inc.,                     )
                                            )
                          Defendant.        )


**ENTRY ON DEFENDANT'S MOTION TO PRECLUDE THE TESTIMONY
OF PLAINTIFF'S EXPERT LAURA J. LAMPTON**

This matter is before the Honorable William G. Hussmann, Jr., United

States Magistrate Judge, on Defendant's Motion to Preclude the Testimony of

Plaintiff's Expert Laura J. Lampton filed May 2, 2011.  (Docket Nos. 50-51).

Plaintiff filed a response on June 1, 2011.  (Docket Nos. 70-71).  Defendant filed

its reply brief on June 30, 2011 (Docket No. 104), and Plaintiff filed his surreply

on July 18, 2011 (Docket No. 116).


**I.  Background**

This case involves a products liability claim brought by Plaintiff, Glen

Andrew Runge, for injuries he sustained as a result of the discharge of a nail

gun into his chest.  Plaintiff filed suit against Defendant, Stanley Fastening

Systems, Inc., alleging that Defendant negligently manufactured the nail gun at

issue in this case, and that the incident would not have happened had the nail gun been manufactured with a safety, a trigger guard, a sequential trip nailer, or with adequate warnings.  (Amended Complaint ¶ 24, 62, 68, 71, 73, 86).  As a result of being struck in the chest by the nail, Plaintiff suffered injuries, including significant blood loss resulting in anoxic/ischemic brain damage, or lack of oxygen to his brain, which has resulted in a loss of vision, a cognitive impairment, and compartmental syndrome of the right leg.  (*See* Report of Sheldon Margulis, M.D.).  At least one doctor, Lance E. Trexler, Ph.D., has examined Plaintiff and opined that Plaintiff suffers from a severe impairment of cognitive functioning which results in the need for 24-hour supervision and assistance with even basic activities of daily living.  (Report of Lance E. Trexler, Ph.D. ("Trexler Report") ¶¶ 1-2).  Dr. Trexler opined that, if not for his parents' decision to care for him, Plaintiff "would require placement in a long-term life-long living residential program for people with brain injury."  (*Id.* ¶ 4).

Based on Plaintiff's injuries, the opinions of Dr. Trexler, meetings with Plaintiff and his parents, as well as other factors, Plaintiff's expert witness, Laura J. Lampton ("Lampton"), developed a Life Care Plan for Plaintiff.  Defendant has moved to exclude Lampton's testimony, including the Life Care Plan, arguing that:  (1) Lampton's opinions are not reliable because they are not based on sufficient facts or data; (2) Lampton's opinions are not the product of reliable principles and methods; and (3) Lampton's opinions do not apply the principles and methods reliably to the facts.

## II. Description of Testimony of Plaintiff's Expert, Laura J. Lampton

Lampton is a life care planner who "make[s] an assessment of an individual after an accident or an injury and assess[es] their disabilities, the areas that they have problems with, what their needs are, and then . . . put[s] together a plan, looking at . . . their future health and medical care needs and the costs associated with those." (Deposition of Laura K. Lampton ("Lampton Dep.") at 15). Lampton prepares the plan after reviewing the medical records, or any other records provided, followed by an interview with the injured person, their family, and their caregivers. (*Id.* at 16). She sometimes meets with the treating doctors "[i]f that can work out," but Lampton did not meet with any of Plaintiff's treating doctors. (*Id.*). She did meet with Plaintiff and his parents. (*Id.* at 30).

Lampton's Life Care Plan for Plaintiff projects lifetime costs for Plaintiff's care and treatment of between $7,684,912 and $7,700,590. (Life Care Plan at 6). A significant portion of the estimated costs involves the estimate of the cost for 24-hour residential care from the date of the Life Care Plan (October 21, 2010) to "life expectancy," costing $7,407,562. (*Id.* at 4). Lampton admitted that she is not aware of any of Plaintiff's treating doctors who recommended that he be removed from his parents' home and placed in 24-hour residential care for the rest of his life. (Lampton Dep. at 35, 67). However, she testified that she included the cost of life-long residential care based on Dr. Trexler's report which provided that such residential care would be necessary "if it were not for

[Plaintiff's] parents." (*Id.* at 32-33, 55-56).  Lampton acknowledged that Plaintiff is currently living with his parents and has done so for most of his life.  She also testified that there have been no issues with the care Plaintiff's parents have provided since the accident, and she is not critical of the care that they have provided.  (*Id.* at 32- 33).  Lampton is "sure" Plaintiff likes living at home with his parents.  (*Id.* at 32).  Lampton further admitted that plaintiff has not and, "for the foreseeable future," will not be incurring any of the costs she included in her Life Care Plan for residential care.  (*Id.* at 66).

In addition to the 24-hour residential care, Lampton included, among other things, the following items in her Life Care Plan:  (1) four visits a year to Plaintiff's primary care physician for the rest of his life, as indicated by Plaintiff's parents (Lampton Dep. at 38); (2) visits to a physiatrist annually for the rest of his life, which she indicated was recommended by Dr. Trexler (*Id.* at 62); (3) annual visits to an optometrist (*Id.* at 63); (4) family psychotherapy for Plaintiff's parents to deal with their feelings of guilt (*Id.* at 64); and (5) 25 occupational therapy visits as recommended by Jeanette Dow, an occupational therapist (*Id.* at 64-65).

### III.  Legal Standard

Whether or not the testimony of an expert witness is admissible is governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct.

2786, 125 L.Ed.2d 469 (1993).  An "expert" is someone who possesses specialized knowledge due to her skill, experience, training, or education that will assist the trier of fact to comprehend the evidence or to determine a fact in issue.  *See* FED.R.EVID. 702.  According to Rule 702, an expert may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *Id.*  The Supreme Court in *Daubert* interpreted Rule 702 to require that expert testimony be both relevant and reliable.  *Daubert*, 509 U.S. at 589.

"The district court functions as a gatekeeper with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission."  *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004).  The Seventh Circuit, pursuant to Rule 702 and Daubert, has developed a three-pronged approach to determining whether expert testimony is admissible.  *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).  First, the witness must qualify as an expert by knowledge, skill, experience, training, or education.  *Id.*  Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable . . . ."  *Id.*  And, third, the testimony must be relevant; it must assist the trier of fact to understand the evidence or determine a fact in issue.  *Id.*

In the court's role as gatekeeper, it is granted a great deal of discretion to determine the method by which the reliability of the proffered expert testimony is

measured, as well as whether the testimony is reliable.  *Jenkins v. Bartlett*, 487

F.3d 482, 489 (7th Cir. 2007).  However, "[t]he soundness of the factual

underpinnings of the expert's analysis and the correctness of the expert's

conclusions based on that analysis are factual matters to be determined by the

trier of fact, or, where appropriate, on summary judgment."  *Smith v. Ford Motor*

*Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

## IV.  Discussion

In this case, Defendant finds fault with Lampton's opinion about the costs

of Plaintiff being placed in a 24-hour care facility because, according to

Defendant, it is contradicted by the fact that Plaintiff still lives at home with his

parents.  Essentially, Defendant questions how Plaintiff can be entitled to

reimbursement for the costs of living in a 24-hour care facility when he is not

living in such a facility and may never live in one.  However, Dr. Trexler has

opined that Plaintiff suffers from a severe impairment of cognitive functioning

which results in the need for 24-hour supervision and assistance, and that

Plaintiff "would require placement in a long-term life-long living residential

program for people with brain injury" if he were not being taken care of by his

family.  (Trexler Report ¶¶ 1-2, 4).  Under Indiana law, which the court must

apply in this case, the trier of fact may award an injured person the *value* of

medical services gratuitously rendered.  The Indiana Supreme Court has

explained that:

> [I]n common law tort actions[,] Indiana has long recognized that a
> plaintiff may recover the reasonable value of medical services,
> regardless of whether the plaintiff is personally liable for them or
> whether they were rendered gratuitously.  Under well-established
> principles of Indiana tort law, the extent of recovery by an injured
> plaintiff for medical expenses depends not upon what the plaintiff
> paid for such services but rather their reasonable value.

*Butler v. Indiana Dep't. of Ins.*, 904 N.E.2d 198, 201-02 (Ind. 2009).

Consequently, Lampton's testimony and Life Care Plan concerning the costs of

placement in a 24-hour care facility are both permissible under Rule 702

because, contrary to Defendant's argument, it is based on sufficient facts (the

opinions of Dr. Trexler).  Whether or not Plaintiff is ever placed in such a 24-

hour care facility is irrelevant, because he is entitled, under Indiana law, to the

value of the 24-hour care his parents are gratuitously providing him.[1]

Additionally, as explained by the Seventh Circuit in *Smith*, 215 F.3d at 718,

either a motion for summary judgment or, more likely, trial is the proper venue

for challenging the soundness of Dr. Trexler's opinions which are the "factual

underpinnings" of Lampton's Life Care Plan.  To the extent that Defendant's

motion seeks to preclude Lampton's opinions concerning the costs of care at a

24-hour care facility, it is **DENIED.**

---

[1]The Magistrate Judge is aware that there is a dispute over whether or not Plaintiff's siblings have agreed to take care of Plaintiff after Plaintiff's parents can no longer do so. However, whether or not Plaintiff will eventually be cared for by his siblings is also irrelevant to the issue of the admissibility of Lampton's Life Care Plan.  Plaintiff can recover the value of 24-hour care, even if his siblings gratuitously provide it for him.

With regard to the other contested portions of Lampton's report and Life Care Plan, the Magistrate Judge concludes that there is a significant factual basis for Lampton's opinions about the need for four visits to a primary care physician a year.  Lampton testified that this was the current practice for Plaintiff since sustaining his injuries and that Plaintiff's parents intended to continue these visits.  While Lampton did not trace her opinion about the need for four visits yearly to the opinion of any doctor, the Magistrate Judge believes that relying on current practices provides a reasonable factual basis for Lampton's opinion.  As for Lampton's opinions concerning the costs for a yearly visit to a physiatrist, a yearly visit to an optometrist, and 24 visits to an occupational therapist, the Magistrate Judge notes that all three of these opinions are based on the opinions of experts who believe that such visits are necessary.  Therefore, Defendant's Motion to Preclude the Testimony of Plaintiff's Expert Laura J. Lampton must be **DENIED** to the extent that Defendant seeks the exclusion of Lampton's testimony about the costs of these items.  However, to the extent that Defendant seeks to preclude Lampton's testimony about the costs of family psychotherapy for Plaintiff's parents to deal with their feelings of guilt, the Magistrate Judge concludes that Defendant's motion must be **GRANTED.**  Plaintiff's parents are not parties to this litigation, and Plaintiff has not explained how he is entitled to recover the cost of psychotherapy for his parents.

## V. Conclusion

For the reasons outlined above, Defendant's Motion to Preclude the Testimony of Plaintiff's Expert, Laura J. Lampton, is **GRANTED, in part,** and **DENIED, in part.**[2]

SO ORDERED.

**Dated:** October 14, 2011

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana


**Electronic copies to:**

John D. Boren
BOREN OLIVER & COFFEY
johnboren@boclawyers.com

John Scott Callahan
scott@scottcallahanattorney.com

David L. Coffman
LEWIS RICE & FINGERSH, L.C.
dcoffman@lewisrice.com

Carine Marie Doyle
LEWIS RICE & FINGERSH L.C.
cdoyle@lewisrice.com

Richard T. Mullineaux
KIGHTLINGER & GRAY, LLP
rmullineaux@k-glaw.com

Stephen A. Oliver
BOREN OLIVER & COFFEY
steveoliver@boclawyers.com

---

[2]In its reply brief, Defendant argues that Lampton has impermissibly attempted to supplement her 26(a)(2) report through the submission of a new affidavit. Additionally, Defendant argues that the Report of Gregory O'Shanick, M.D., is untimely and that Lampton cannot base her opinions on Dr. O'Shanick's report. However, a review of the docket does not indicate that Defendant has filed a Motion to Strike either Lampton's affidavit or Dr. O'Shanick's report, and the court will not entertain separate new motions that were raised within a reply brief. Furthermore, the court has not, nor does it need to, rely on either of these pieces of evidence in ruling on Defendant's motion.